IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34120-8-III |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY J. SIMS, | ) | |
| | ) | |
| Respondent, | ) | PUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES and WESTERN | ) | |
| STATE HOSPITAL, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SEVERAL OTHER SIMILAR CASES | ) | |
| CONSOLIDATED ON APPEAL.[†] | ) | |

LAWRENCE-BERREY, A.C.J. — Courts are authorized to impose two types of

---

[†] In each of the following consolidated cases, the Department of Social and Health Services (DSHS) and Western State Hospital appealed contempt sanctions that were imposed for delays in providing competency evaluation and/or restoration services to criminal defendants: No. 34121-6-III, *State v. Larson*; No. 34122-4-III, *State v. Owen*; No. 34123-2-III, *State v. Johnston*; No. 34124-1-III, *State v. Cooper*; No. 34125-9-III, *State v. Blake*; No. 34126-7-III, *State v. Pal*; No. 34127-5-III, *State v. Fairfield*; No. 34128-3-III, *State v. Tall*; No. 34129-1-III, *State v. Spain*; No. 34130-5-III, *State v. Lennartz*; No. 34131-3-III, *State v. McCarthy*; No. 34132-1-III, *State v. Alexander*; No. 34133-0-III, *State v. Fleming*; No. 34134-8-III, *State v. Fletcher*; No. 34135-6-III, *State v. Schilling*; No. 34136-4-III, *State v. Montoya*; No. 34137-2-III, *State v. Sackmann*; No. 34138-1-III, *State v. Rettinger*; No. 34139-9-III, *State v. Anderson*; No. 34140-2-III, *State v. Graham*; No. 34141-1-III, *State v. Keranen*; No. 34142-9-III, *State v. Fregoso*; No. 34143-7-III, *State v. Beggs*; No. 34180-1-III, *State v. Sandstrom*; No. 34205-1-III, *State v. Lopez*.

statutory sanctions, remedial or punitive. Remedial sanctions may be summarily imposed for the purpose of coercing a person to perform an act that is yet in the person's power to perform. Punitive sanctions, however, are meant to punish a past contempt of court. By statute, unless the contemptuous act occurred in the court's presence, courts may not summarily impose punitive sanctions. We hold that where a court imposes summary sanctions for contempt that did not occur in its presence, statutory sanctions are limited to remedial sanctions.

In determining whether monetary sanctions are remedial, we focus on the date the trial court made its contempt finding, even if the finding was not then reduced to a written order or judgment. Only monetary sanctions that accrue from the date of the contempt finding are remedial, because only to this extent is the act that the court seeks to coerce within the person's power to perform.

The State must consent to being held to interest on its debts, including postjudgment interest on monetary statutory sanctions. A waiver of sovereign immunity for purposes of postjudgment interest can be either express or implied. A waiver may be implied in those situations where the legislature has enacted a statute that provides for comprehensive relief. By enacting the contempt of court statute, chapter 7.21 RCW, the legislature authorized full compensation to parties injured by contemptuous acts. We, therefore, hold that the State has impliedly waived its sovereign immunity from

2

postjudgment interest on statutory sanctions.

Here, the trial court summarily imposed monetary sanctions against the Department of Social and Health Services (DSHS) for not timely completing mental health evaluations for criminal defendants. We reverse the sanctions only to the extent they are punitive, but affirm the award of postjudgment interest.

## FACTS

The parties agree that the facts associated with Anthony Sims's appeal serve as a template for the other appeals. We limit our discussion of the facts accordingly.

The State charged Mr. Sims with second degree burglary. A question concerning Mr. Sims's competency arose, and on October 14, 2014, the criminal case was stayed pending a competency evaluation. On November 13, Mr. Sims filed a motion to compel his competency evaluation. On November 20, the trial court heard argument concerning the motion. During argument, DSHS noted that Mr. Sims was and always had been scheduled to have his evaluation on December 15. At the conclusion of the November 20 argument, the trial court ordered DSHS to perform Mr. Sims's competency evaluation by December 2. The trial court's order was not reduced to written form.

On November 26, 2014, Mr. Sims filed a motion asking the trial court to order DSHS to show cause for its failure to schedule his evaluation in compliance with the court's November 20 order. Mr. Sims asked the trial court to impose remedial sanctions

3

of $500 per day against DSHS for every day past December 2 until he received his competency evaluation.

On December 10, DSHS filed a response. In addition to other objections, DSHS argued that portions of the requested sanctions were retroactive punitive sanctions and, thus, were unable to be adjudicated in the current action.

On December 11 and 12, the trial court heard Mr. Sims's motion together with motions filed by five other similarly situated defendants. On December 12, the trial court orally ruled that the sanctions would be $200 per day from the ordered deadline until the contempt was purged by DSHS completing Mr. Sims's competency evaluation. The court explained that the sanctions were remedial sanctions ordered in accordance with RCW 7.21.030, rather than in accordance with its inherent authority. The court directed the funds to go to the registry of the court, pending a later final disposition; but compensation to the defendants for actual losses was not contemplated.[1] Mr. Sims's competency evaluation occurred as originally scheduled, on December 15, 2014.

The trial court did not enter a written contempt order with findings until January 16, 2015. The written order discussed the court's reasoning that high level governmental and budgetary decisions drove the intentional violation of the court's order,

_____

[1] On January 15, 2016, the trial court amended the contempt order, specifying the sanctions were to be paid to the clerk of the court and directed to Spokane County Detention Services for the purpose of assisting mentally ill offenders in jail.

4

by way of lack of resources for DSHS services in eastern Washington. The court found

DSHS in contempt for violating its November 20 order, and sanctioned DSHS $200 per

day from December 2 through December 14.

The trial court held several other hearings in a similar fashion, where groups of

defendants whose competency evaluations were not completed timely sought sanctions.

At the conclusion of each hearing, the court—usually weeks later—entered a written

order of contempt supported by findings.

The principal amounts of the sanctions were set forth in 28 individual orders of

contempt and total $337,500. Each judgment also includes interest at 12 percent per

year.

DSHS timely appealed the orders imposing sanctions and the judgments in each of

the 26 cases. We consolidated the appeals because they all presented similar legal issues.

## ANALYSIS

A.    TO THE EXTENT THE SANCTIONS ARE PUNITIVE AND WERE SUMMARILY
      IMPOSED, THEY MUST BE STRICKEN

DSHS first argues that the sanctions must be stricken to the extent they are

punitive. We agree with this portion of DSHS's argument.

> 1.    *The trial court did not comply with the procedures for imposing
>        punitive sanctions and, therefore, it had no authority to impose such
>        sanctions*

5

This court reviews de novo a trial court's authority to impose contempt sanctions. *In re Dependency of A.K.*, 162 Wn.2d 632, 644, 174 P.3d 11 (2007). There are two forms of statutory contempt sanctions, remedial and punitive. A remedial sanction is "a sanction imposed for coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). A remedial sanction is sometimes referred to as coercive, because the goal of the sanction is to coerce a party to comply with a court order. *In re Pers. Restraint of King*, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988). A remedial sanction must contain a purge clause or it loses its coercive character and becomes punitive. *In re Rapid Settlements, Ltd.*, 189 Wn. App. 584, 613, 359 P.3d 823 (2015), *review denied*, 185 Wn.2d 1020, 369 P.3d 500 (2016).

A punitive sanction is "a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). Such sanctions do not afford the party an opportunity to purge the contempt. *State v. Buckley*, 83 Wn. App. 707, 711, 924 P.2d 40 (1996). A court may punish the past contemptuous act with a fine and/or imprisonment. RCW 7.21.050(2). Because of due process concerns, RCW 7.21.040 provides a procedure to ensure that a person facing such a sanction actually committed the contemptuous act. *In re M.B.*, 101 Wn. App. 425, 453, 3 P.3d 780 (2000). Unless the contemptuous act occurred in the presence of a judge certifying

the same, the procedure requires the county prosecutor or city attorney to file a complaint or an information, and for a trial to occur before a neutral judge. RCW 7.21.040(2), .050(1); *see also In re Mowery*, 141 Wn. App. 263, 276, 169 P.3d 835 (2007).

Here, the trial court did not afford DSHS the procedures required under RCW 7.21.040(2). For this reason, the trial court was without authority to impose punitive sanctions.

The respondents put forth various arguments, mostly citing federal authorities, why the sanctions should be deemed remedial. For instance, they discuss the intent of the sanctions, the need for sanctions against DSHS, and the arguable compensatory nature of the sanctions. We are unpersuaded by their arguments.

The legislature defined the distinction between remedial and punitive sanctions. The legislature defined a remedial sanction as a sanction imposed "for the purpose of coercing performance when the contempt consists of . . . *an act that is yet in the person's power to perform.*" RCW 7.21.010(3) (emphasis added). When the trial court, for example, found DSHS in contempt on December 12, 2014, DSHS could not perform Mr. Sims's competency evaluation any earlier than that date. To the extent the sanctions punish DSHS for its failure to perform Mr. Sims's competency evaluation prior to December 12, 2014, those sanctions were punitive and we order the trial court to strike them.

7

2. *RCW 7.21.030(2)(b) authorizes a limited forfeiture for each day the contempt of court continues after the contempt finding*

DSHS next argues that the contempt order should not be considered effective until the contempt order is placed in writing with supportive findings. If we accept DSHS's argument, any amount owing prior to a written order would be considered punitive because there would be no ability for DSHS to purge the accumulated debt. We decline to accept DSHS's argument. To do so would both be contrary to statutory authority and delay the ability of courts to enforce their own orders.

RCW 7.21.030 provides:

> (2) If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions:
>
> . . . .
> (b) A forfeiture not to exceed two thousand dollars for each day the contempt of court continues.

So by statute, once a court makes a finding that a person is in contempt, the court has authority to impose a limited forfeiture for each day the contempt of court continues. Nothing in the statute requires the court to enter a written order prior to the sanctions becoming effective. The legislature did not see fit to impose such a requirement, nor do we.

8

DSHS cites to *State v. Dailey*, 93 Wn.2d 454, 610 P.2d 357 (1980), a case where our Supreme Court reviewed the propriety of a trial court's decision based on its written order instead of its oral comments. The *Dailey* court said, "Even a trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law, and judgment." *Id.* at 458-59. We agree that a trial court's oral decision is not binding or final. But this does not mean that a court's verbal order is ineffective, nor does it mean that a person may ignore a court's verbal order until the order is put in writing.

In a similar vein, DSHS argues that oral contempt decisions should be treated differently than written contempt orders because oral decisions are subject to modification until put in written form. We are unpersuaded. The inability to modify an order should not be the touchstone for determining an order's enforceability. A trial court has broad authority to modify an order, even a written one. *See* CrR 7.8.

DSHS also cites to *Templeton v. Hurtado*, 92 Wn. App. 847, 853, 965 P.2d 1131 (1998), a case where the reviewing court remanded with directions for the trial court to enter adequate written findings. The *Templeton* court said, "[t]o protect its own authority to enforce a contempt sanction, a trial court must be sure written findings are entered, either by delegating the task to opposing counsel or writing them out personally." *Id.*

We agree that contempt sanctions should be placed in a written order with adequate findings to protect the trial court's authority. But *Templeton* does not stand for the proposition that an oral contempt decision is not effective. Rather, *Templeton* reiterates the requirement that a written contempt order with adequate findings is necessary for appellate review. *Id.* at 852-53.

DSHS further argues that we should treat oral contempt decisions and written contempt orders differently because oral decisions cannot be appealed. Again, we are unpersuaded. If a person wants to appeal an oral contempt decision, a person can easily put the decision in written form for presentment to the court.

We refuse to adopt a rule that would treat an oral contempt decision as ineffective. To do so would delay a court's authority to enforce its own orders.

We use *State v. Sims* to illustrate our holding. Here, the trial court orally found DSHS in contempt on December 12, 2014. RCW 7.24.030(2)(b) authorizes remedial sanctions for each day the contempt of court continues from the finding. The trial court ordered sanctions in the amount of $200 per day. The contempt of court continued through December 12, 13, and 14. Three days of sanctions total $600.

B.    POSTJUDGMENT INTEREST

10

DSHS next argues that postjudgment interest must be stricken because the State has not waived sovereign immunity with respect to postjudgment interest on statutory sanctions. This issue may be raised for the first time on appeal. *State v. Lee*, 96 Wn. App. 336, 345 n.10, 979 P.2d 458 (1999).

The State must consent to being held to interest on its debts. *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 615, 94 P.3d 961 (2004). A waiver of sovereign immunity for purposes of postjudgment interest can be either express or implied. *Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 526, 598 P.2d 1372 (1979). Whether such a waiver has occurred is a question of statutory interpretation that we review de novo. *Union Elevator & Warehouse Co. v. Dep't of Transp.*, 171 Wn.2d 54, 59, 248 P.3d 83 (2011).

An implied waiver of sovereign immunity exists when by reasonable construction of a statute or contract the State has "placed itself in a position of attendant liability." *Id.* at 68. An implied waiver can occur when the legislature enacts a statute providing "comprehensive relief to aggrieved claimants." *Id.* at 65. To determine whether the legislature has impliedly waived immunity and enacted comprehensive relief to aggrieved claimants, this court focuses on "the statutory language and purpose" of the statute. *Id.* An attorney fee provision is a suggestion the legislature intended comprehensive relief. *Id.* at 64-65 (discussing *Smoke v. City of Seattle*, 132 Wn.2d 214, 937 P.2d 186 (1997)).

11

The respondents concede that nothing in chapter 7.21 RCW can be construed as an explicit waiver of sovereign immunity that would permit postjudgment interest being added to monetary sanctions imposed against the State. The respondents instead argue that the statutory language and purpose of RCW 7.21.030 support a determination of implied waiver. We agree.

RCW 7.21.030(3) provides:

The court may, in addition to the remedial sanctions set forth in subsection (2) of this section, order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees.

RCW 7.21.030(3) thus provides full compensatory relief to parties injured by contemptuous acts, including costs and reasonable attorney fees.

DSHS notes that here, the trial court did not award any compensatory relief to a party, but instead ordered all monetary sanctions to be paid to Spokane County Detention Services. DSHS argues that in situations where the trial court's sanctions do not include any compensatory relief to a party, we should not find an implied waiver of sovereign immunity. We disagree with DSHS's argument.

Whether an implied waiver of sovereign immunity has occurred depends on the statutory language and purpose of the statute, not on the specific relief granted by a trial court. Here, the statutory purpose, supported by its language, provides comprehensive

12

No. 34120-8-III
*State v. Sims*

relief to parties injured by contemptuous acts. We, therefore, conclude that the State has impliedly consented to interest on statutory sanctions imposed against it. For this reason, the trial court's award of postjudgment interest was proper.

In a similar vein, DSHS argues that oral contempt decisions should be treated differently than written contempt orders because oral decisions are subject to modification until put in written form. We are unpersuaded. The inability to modify an order should not be the touchstone for determining an order's enforceability. A trial court has broad authority to modify an order, even a written one. *See* CrR 7.8.

Reversed in part, affirmed in part. [2]

Lawrence-Berrey, A.C.J.
Lawrence-Berrey, A.C.J.

I CONCUR:

Pennell, J.

---

[2] The dissent would reverse all sanctions on the theory that they are "an unnecessary attempt to direct legislative and executive policy choices while directly benefiting a political subdivision of the state by transferring state funds to the county." Dissent at 5 (footnote omitted). DSHS did not make this argument to the trial court nor did it make this argument to us. In general, an argument not made to the trial court will be deemed waived for purposes of appellate review. *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). Also, an appellate court will not decide a case on the basis of a theory not briefed by the parties. RAP 12.1. For these reasons, we do not address the dissent's theory.

13

No. 34120-8-III

KORSMO, J. (dissenting) — The political science novelty that was crafted here, wherein a superior court judge acting on a contempt motion in a criminal case orders an executive branch state agency to make payments to a county jail for the benefit of future county prisoners in order to coerce the state legislature into better funding the agency (and despite the existence of a federal court judgment doing much the same), convinces me that this is not a civil contempt action. John is robbing Peter in order to pay Paul in hopes that one of Peter's relatives will pay Peter enough in the future to do his job, while having Paul do Peter's work for him in the interim. Because this is not civil contempt, I would reverse the remedy imposed by the trial court. Since the majority largely affirms that ruling, I dissent.

As respondent notes in his briefing, the remedy in this contempt action was borrowed from an injunction issued in a civil rights case, *Trueblood v. Washington State Department of Social & Health Services*, 822 F.3d 1037 (9th Cir. 2016). That case involved a class action brought in federal court under the authority of 42 U.S.C. § 1983 that resulted in a permanent injunction requiring that competency evaluations be performed in a timely manner in order to effectuate the due process rights of the detainee.

*Id.* at 1039-41. On remand[1] from the Ninth Circuit, the district court amended its injunction to require that evaluations be conducted within 14 days of the written order for the evaluation consistent with the time period set forth by an amendment to Washington's competency statute. *See Trueblood v. Wash. State Dep't. of Soc. & Health Servs.*, 2016 WL 4268933 (W.D. Wash. Aug. 15, 2016) (court order). The court also imposed fines for missed evaluation deadlines.

While it is easy to see where the trial court's remedy came from, it also is easy to see this approach is untenable in a civil contempt proceeding. This is the wrong proceeding in which to be taking these actions.

Remedial sanctions are authorized by RCW 7.21.030. This statute is frequently referred to as "civil contempt." *In re Det. of Young*, 163 Wn.2d 684, 693 n.2, 185 P.3d 1180 (2008). RCW 7.21.030(1) allows either the court or a party to seek remedial sanctions for injuries arising from contempt of court. A "remedial sanction" is one that is "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3).

RCW 7.21.030(2), in relevant part, outlines the possible remedial sanctions available for contempt:

---

[1] The trial court ruling in this case was not informed by the Ninth Circuit opinion or by the district court's modification of the terms of its injunction.

2

> If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions:
>
> (a) Imprisonment if the contempt of court is of a type defined in RCW 7.21.010(1) (b) through (d). The imprisonment may extend only so long as it serves a coercive purpose.
>
> (b) A forfeiture not to exceed two thousand dollars for each day the contempt of court continues.
>
> (c) An order designed to ensure compliance with a prior order of the court.

Punitive sanctions are authorized by RCW 7.21.040. This statute also is known as "criminal contempt." *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 105, 52 P.3d 485 (2002). "'Punitive sanction' means a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). If a court seeks to impose punitive sanctions, a prosecutor must file a complaint or information and certain other procedures must be followed that are generally consistent with a criminal case. RCW 7.21.040(2).

> [A] sanction is punitive if there is a determinate sentence and no opportunity to "purge" the contempt. . . . [I]t is remedial where it is indeterminate and the contemnor is released upon complying with the court's order. . . . A punitive sanction generally is imposed to vindicate the court's authority, while a remedial sanction typically benefits another party.

*Rhinevault v. Rhinevault*, 91 Wn. App. 688, 694, 959 P.2d 687 (1998).

A trial court's decision to impose remedial sanctions is within the court's sound discretion. *Id.* It will not be disturbed absent abuse of that discretion. *Id.* A court abuses its discretion if its decision is "manifestly unreasonable or rests upon untenable

3

grounds or reasons." *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 497, 183 P.3d 283 (2008).

While the difference between civil (remedial) and criminal (punitive) contempt can be easily stated, distinguishing between the two can be hard because coercive sanctions often appear to be punitive. *In re Interest of M.B.*, 101 Wn. App. 425, 438, 3 P.3d 780 (2000). A critical factor in distinguishing between the two circumstances is the triggering mechanism for the sanction. If the purpose of the sanction is to force a person to do something, it is coercive and hence "remedial." *In re Pers. Restraint of King*, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988). Where a sanction is imposed for past conduct, it typically is punitive. *Id.* A civil sanction "is conditional and indeterminate, *i.e.*, where the contemnor carries the keys of the prison door in his own pocket and can let himself out by simply obeying the court order." *Id.*

The ruling here bears hallmarks of both categories. The trigger mechanism for sanctions is the failure to conduct the evaluation by the court's deadline, something that presumably is within the agency's power to meet. This suggests a civil contempt is at issue, as does the daily fine authorized by RCW 7.21.030(2)(b). Other aspects of the order suggest otherwise. Of particular concern is that the essential purpose of the penalty provision is to get state government to reorder its policies. The ruling is not remedial

4

with respect to Mr. Sims or any of the other defendants. It is an unnecessary[2] attempt to direct legislative and executive policy choices while directly benefiting a political subdivision of the state by transferring state funds to the county. That is not a proper use of the contempt authority in this context.

There are methods of compelling state government to live up to its constitutional obligations. *Trueblood* provides one example—a civil rights class action lawsuit that resulted in injunctive relief defining a due process right to timely competency evaluations, enforced by fines directed at the party that was not complying with the court's judgment. Another example is found in *McCleary v. State*, 173 Wn.2d 477, 269 P.3d 227 (2012). That was a declaratory judgment action requiring state government to fully fund its constitutional obligation to maintain the public schools. *Id.* at 512. The court used its contempt[3] authority to enforce the judgment entered in the declaratory action. *Id.* at 545-46.

---

[2] The Department of Social and Health Services (DSHS) is already under court order in *Trueblood* to remedy the deficiencies that have left the department unable to comply with the deadlines required by the injunction in that case. The federal court does not appear to need state court assistance in forcing compliance with its judgment.

[3] The Supreme Court in 2014 found the legislature to be out of compliance with the ruling in *McCleary* and, thus, in contempt of court. *See* Order of January 9, 2014. In 2015, the court found that the legislature still was not in compliance with the court's ruling and imposed a penalty of $100,000 per day for each day the lack of compliance continued. *See* Order of August 13, 2015. The same finding was made in 2016 (Order of October 6, 2016) and in 2017 (Order of November 15, 2017), with the daily fine continuing to be imposed.

5

This case is neither of those cases. It is not a declaratory action. It is not a civil rights case. There is no injunction. Neither is there a final judgment in need of enforcement. This is an ordinary criminal case where a contempt motion was brought to force an evaluation on a date set by the court instead of by the agency assigned the task of conducting the evaluation. The agency was not even a party to this case.

For all of these reasons, the approach adopted by the trial court is not appropriate to a remedial contempt action. It is an effort by the local court to control and direct the activities of a state agency at both operative and policy levels. The latter action is not designed to remedy Mr. Sims' situation; rather, it is an attempt to influence executive and/or legislative policy choices.[4] Judicial control over future legislative policy choices may serve to alleviate the problem of delayed evaluations to defendants sometime in the future, but it cannot be said to provide a remedy to Mr. Sims. If his rights were violated in this case, he has been provided no relief.[5] Instead, he is essentially treated as if he

---

[4] One difficulty with the record of this case is that there is no evidence suggesting why DSHS was not funded in a manner allowing it to comply with the dictates of *Trueblood*. Was that a matter of legislative design? Did the agency fail to seek adequate funding? Was sufficient funding supplied, but simply not allocated properly? On this record, we will never know.

[5] It understandably would be problematic to award damages to Mr. Sims or anyone else whose evaluation was delayed since an award might threaten indigency status or eligibility for government services; nor is a criminal case a good vehicle for establishing an individual's actual damages.

6

were a plaintiff in a class action designed to obtain an award benefitting future members of the class.

For these reasons, I think the trial court's ruling falls on the criminal contempt side of the line. It is an effort to punish for past budget decisions and shape future decisions rather than provide relief to Mr. Sims or others who were denied their due process rights because of a late evaluation. However, this contempt case was not brought under the auspices of RCW 7.21.040 by the county prosecuting attorney. It should be reversed.

There are additional problems with the trial court's order. Directing that an evaluation be conducted on a specific date is unwise. The scheduling function is beyond the competence of a local judge, who has clear authority to order State agencies to comply with their statutory and constitutional duties, but is poorly equipped to run those agencies since the judges are responsible solely for the cases brought in their jurisdiction and do not have the ability to schedule appointments for an agency tasked with performing evaluations for all of the counties of the state. This can lead to conflicting orders requiring the agency to perform the same task on the same day in multiple jurisdictions, an impossibility for any human who cannot split her body into multiple copies.

Although I agree with the majority that an order need not be reduced to writing before it is effectual, I have quite a bit of sympathy for the argument that the Department of Social and Health Services (DSHS) needs a written order in a timely fashion. For one

7

thing, receipt of the written order directing a competency evaluation is the trigger for the federal due process right recognized by *Trueblood*. It is ironic that DSHS can be found to violate a right that Mr. Sims himself could not enforce without the written order. But, written orders also serve functions other than memorializing the will of the court. A written document is a necessary condition before an appeal (or discretionary review) to this court can be filed. It typically is necessary for other purposes such as seeking reconsideration or relief from judgment. It may be necessary so that the person or agency who has been ordered to perform a task is aware of the job that has been assigned and what is expected. Orders serve many purposes other than to establish purge conditions. Written orders are the best practice and should be entered as early as possible.

Finally, I have serious concerns with the majority's determination that interest is available on a contempt judgment. There is no controlling Washington authority on this point. My research suggests that the majority of states follow the approach of the majority, but comparing other states is a difficult task given the statutory permutations across the country. Many states expressly say that interest is or is not available. However, other states where legislative schemes are silent on the topic, as is the case in Washington, suggest that waiver of immunity only extends to interest where the legislative scheme says interest is available. One example is Massachusetts. *See, e.g., Sheriff of Suffolk County v. Jail Officers & Emps. of Suffolk County*, 465 Mass. 584, 597, 990 N.E.2d 1042 (2013) (no interest available on contempt judgment since no express

8

waiver of sovereign immunity as to interest); MASS. GEN. LAWS ch. 258 § 4. More briefing on this topic from states whose statutory waiver of immunity was silent on the question of interest would be useful.

Finally, I would note that in *McCleary*, which likely is the most prominent remedial contempt case of this generation, the Washington Supreme Court did not impose interest on its $100,000 daily penalty, even though that relief was sought by the plaintiffs in that action. Although the topic is not discussed in any of the three contempt orders entered in the case to this point, the absence of interest is, I think, telling.

In conclusion, and with great respect for the late jurist who entered the contempt orders we are reviewing, the trial court tried to do too much here. The contempt powers of a federal court enforcing an injunction are broader than those created by our statutes. While the attempt to duplicate the federal court rulings was understandable, the enforcement actions exceeded the trial court's statutory authority. The effort to control policy choices belonging to other branches of government tipped this case into the criminal contempt arena. For that reason, we should reverse the rulings in their entirety. Accordingly, I respectfully dissent.

_____
Korsmo, J.

9