IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JULIANA SALES STRAIGHT,<br><br>               Appellant,<br><br>       v.<br><br>ETHAN HUNTER STRAIGHT,<br><br>            Respondent. | No. 86692-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Juliana Sales Straight appeals orders entered in the dissolution of her marriage to Ethan Hunter Straight and specifically challenges aspects of the parenting plan, child support order, and property division. She asserts that the trial court failed to consider the best interests of the child in the parenting plan, it erred by imputing her income to determine child support, and the division of property was not equitable. We disagree and affirm.

FACTS

Juliana Straight and Ethan Straight met online, and, after she came to the United States from Brazil, Juliana moved in with Ethan in 2013.[1] She gave birth to the couple's only child, J., in 2014, and they married in 2016.

---

[1] Because the parties share a last name, we refer to them by their first names for clarity and precision. No disrespect is intended.

Juliana filed a petition for dissolution in July 2022. She deferred on providing a proposed parenting plan, asked for a child support award in accordance with state law, and for the court to order that each parent could claim J. as a dependent on their tax returns in alternating years. Ethan brought a motion for a temporary family law order in October 2022. He sought entry of his proposed temporary parenting plan and child support order. His declaration explained that Juliana had denied his request for a week on/week off parenting schedule and that, thus far, he had been limited to two days a week with their child. He asked for the court to implement his proposed residential schedule which Juliana had denied. Ethan acknowledged that he was the obligor parent based on his greater income, but requested a downward deviation that would reflect the proposed equal parenting time, and the fact that he was still paying half the mortgage on the family home despite having moved out. He also alleged that Juliana's gross monthly income was $3,952.12, based on her deposits in the couple's joint bank account prior to the dissolution.

Juliana filed a response declaration and a surresponse declaration on November 4 and 7, respectively. She first sought entry of her proposed temporary parenting plan and temporary child support order based on her financial worksheets, an order appointing a parenting evaluator, and her proposed temporary order "regarding use of property and payment of household expenses and debts." The second declaration contained allegations regarding disparaging remarks Ethan had purportedly made about Juliana in front of J. and in text correspondence with the child. Ethan objected to Juliana's untimely submission

of the November 7 surresponse declaration, requested that it be stricken as such, and provided his own declaration which contained his own characterization of the relevant facts. He also submitted proposed child support worksheets and order, including his continued request for a downward deviation, and his proposed parenting plan.

The superior court commissioner entered temporary orders in November 2022. The temporary child support order imputed Juliana's income on the basis that her true income was unknown and she was voluntarily underemployed, but denied Ethan's request for a downward deviation. The order imposed an approximately $800 monthly child support obligation on Ethan. The commissioner did not grant Ethan's request for equal parenting time and, instead, established a schedule that provided him residential time that consisted of two days per week and alternating weekends.

Roughly a week later, Ethan sought reconsideration of the temporary orders. He asked the court to correct the time the parties were to exchange J. on Fridays to reflect the court's oral ruling and for the court to allow him to claim J. on his income tax return every year as, he asserted, Juliana historically had not filed an annual tax return or otherwise reported her income. Juliana opposed reconsideration. Ethan filed a reply declaration that repeated his request and downplayed the conflict to which Juliana had attested. The trial court granted Ethan's motion in part. It ordered that the timing of exchanges would reflect its oral ruling, but denied Ethan's request to claim J. on his tax return every year.

The proceedings were prolonged by several continuances and Juliana's change of counsel. Ethan and Juliana agreed to a joint statement of evidence in April 2024 that outlined the witnesses who would appear and exhibits that would be considered. That same month, Ethan filed a trial brief that reiterated his earlier requests for equal residential time and downward deviation of his child support obligation. He also asked the trial court to not award spousal maintenance and to order the sale of the family home. Juliana appeared pro se at the trial which was conducted at the end of April.[2]

The trial court entered its orders and findings in May 2024. The parenting plan ordered equal residential time achieved with an alternating weekly schedule consistent with Ethan's proposal. It also contained a clause prohibiting "derogatory comments" by the parents about the other, allowing anyone else to do so, or encouraging the child to make such comments. The parenting plan also expressly prohibited the parents from discussing the case with J. The court declined to award Juliana spousal maintenance and entered a child support order that designated Ethan as the obligor parent, but granted him a downward deviation due to the equal parenting time. The trial court imputed Juliana's income because the judge concluded that the precise figure was unknown based on the evidence presented.

Juliana timely appealed.

_____

[2] The clerk's minutes are the only evidence available regarding the trial dates, as Juliana did not submit a report of proceedings from the trial. We will address the implications this has for her appeal in Part I of this opinion.

- 4 -

ANALYSIS

I.      Record on Appeal

Before considering the merits of her assignments of error, we must address the record on appeal.  Juliana has submitted only a partial record of proceedings that covers solely the appearance of the parties for the presentation of final orders and does not include the trial or any of the pretrial hearings.  In his brief, Ethan argues that the record is insufficient and does not comply with the Rules of Appellate Procedure (RAPs), which should preclude our review.  Juliana's reply brief contends that the record is adequate for us to address the issues she raises, that she "made a good faith effort to provide a sufficient record," and "Ethan could have requested record supplementation."

The appellant must comply with the RAPs and perfect the record on appeal "so the reviewing court has before it all the evidence relevant to deciding the issues."  *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998).  "The court may decline to reach the merits of an issue if this burden is not met." *Id.*

> A party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review. If the party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding.

RAP 9.2(b).  But, we liberally interpret these rules "to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands."  RAP 1.2(a).

Juliana failed to provide this panel a transcript of crucial events in this case, including the trial testimony of witnesses called by both parties. However, she provides the full clerk's papers, including the trial court's findings and conclusions, and contends the record she provided is adequate for our review of the issues she has raised; because of our strong preference for resolving cases on the merits, we proceed with our review.

II.    Parenting Plan

Juliana avers that the trial court abused its discretion as to the entry of the final parenting plan. Specifically, she argues that the court erred when it failed to adequately consider J.'s best interests, improperly granted equal residential time, insufficiently considered Ethan's remarks that disparaged her in front of J., and declined to appoint a parenting evaluator. Ethan argues that the findings of fact show that the judge considered the various factors required by statute and, therefore, the terms of the final parenting plan were within the judge's discretion.

We review the parenting plan for an abuse of discretion. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). The court abuses its discretion when its "'decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Id.* (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)). The fundamental principle that guides the court's determination and allocation of parental responsibilities is the "best interests of the child." RCW 26.09.002. These interests are served by "a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care." *Id.* The current "pattern of interaction between a parent and child" should

only be "altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm." *Id.* RCW 26.09.184 further tailors these requirements to the context of the parenting plan by setting out the factors that must be considered and specifying the particular provisions the plan should contain in order to provide for the child's best interests. "We treat the trial court's findings of fact as verities on appeal, so long as they are supported by substantial evidence." *In re Marriage of Anthony,* 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019). To meet this burden, the evidence must be "sufficient to persuade a fair-minded person of the truth of the matter asserted." *Chandola*, 180 Wn.2d at 642.

A.     Residential Time

Juliana alleges that the trial judge failed to consider that, in the past, she had performed most of the parenting duties, so it would be in J.'s best interests to continue that arrangement. Ethan asserts that there was no error because the trial judge found that both parents had a good relationship with J. and it is in the child's best interests to spend time with both parents going forward.

The factors weighed in the determination of residential time in a permanent parenting plan are provided by RCW 26.09.187(3)(a). The court must "make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child." RCW 26.09.187(3)(a). Each parent's "past and potential for future performance of parenting functions" will be considered, but among the factors "the greatest weight" shall be given to

- 7 -

the "relative strength, nature, and stability of the child's relationship with each parent." RCW 26.09.187(3)(a)(iii), (i).

Here, the trial court began "Attachment A", which contained its additional findings of fact supporting the parenting plan, by setting out the statutory factors in RCW 26.09.187(3). The judge then made several specific findings regarding J.'s relationship with each parent and their respective ability to provide her with adequate care going forward. The judge indicated that both parents have a good relationship with J. and are equipped to provide proper parenting. Both were described as "excellent parents" who "deeply love [J.]" and "are interested in and actively engaged with their daughter in her educational and extracurricular activities," and the court noted that J. has a "strong bond" with each parent. The trial court acknowledged that Juliana was "the more active parent" prior to separation, but also that Ethan "assisted in parenting and is fully equipped and has a strong desire to equally co-parent." The judge observed that Ethan was "actively engaged" in meeting his daughters needs and praised him for engaging her in "activities which she enjoys and benefits [sic] her." Several findings reflect the trial judge's sound conclusion J.'s interests would be best served by equal residential time and co-parents with a harmonious relationship. The trial judge explicitly considered the relevant factors, made specific findings of fact indicating that both parents are fit to care for J. and J. would be best served by spending time with both parents. While the court acknowledged that Juliana had been the more active parent in the past, it also noted that this was not a reason to limit Ethan's residential time going forward. Juliana has failed to demonstrate how these findings are

unsupported by the record that, due to her strategic choice, does not include any trial testimony, or otherwise establish that the court abused its discretion when it ordered equal residential time.

B.    Disparagement of the Other Parent and Equal Parenting Time

Juliana next asserts that the trial judge failed to consider disparaging remarks Ethan had made about Juliana in front of J. and in text messages and contends his parenting time should have been limited based on this conduct. In her opening brief, she assigned error to the purported failure of the trial court to include a clause prohibiting this behavior. But, in a footnote in her reply brief, she concedes that the "the final parenting plan did, in fact, contain a provision prohibiting either party from making derogatory comments about the other in the child's presence," and apparently withdraws that aspect of her challenge. Ethan contends that the inclusion of the clause that prohibits "derogatory comments" by the parents or others in J.'s presence, and discussing the case with J., shows that the challenged remarks were considered in the formulation of the plan, but that the judge did not find that any such conduct necessitated the reduction of his parenting time.

There are circumstances where a parent speaking poorly about the other parent will compel a limitation on their parenting time. "A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan if" there is an "abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e).

- 9 -

However, Juliana's briefing does not engage in analysis of this or any other statute, and she concedes that the trial court took one of the steps she offered to mitigate the risk of harm from such behavior: it included a clause prohibiting both parent's from making derogatory remarks about the other in front of J. The parenting plan includes the following directive:

> Derogatory Comments—Discussing Case with Child: Neither parent shall make derogatory comments about the other parent or allow anyone else to do so in the child's presence. Neither parent shall allow or encourage the child to make derogatory comments about the other parent. Neither parent shall discuss the case with the child.

Nonetheless, rather than analyzing the record before us, scant as it may be, through the lens of controlling authority, Juliana simply insists in briefing that the trial court "failed to consider Ethan's prior disparagement of [her] in affording Ethan equal time." Such conclusory statements, without authority or citation to the record, are insufficient to carry her burden on appeal to demonstrate that the trial court abused its discretion. *In re Vulnerable Adult Pet. of Winter,* 12 Wn. App. 2d 815, 835, 460 P.3d 667 (2020). This is particularly true given that the trial court's findings of fact suggest that it considered the strife between the parents in formulating the parenting plan insofar as it noted "the tension between the parties was evident during the trial." Juliana has failed to establish error on this matter.

C.    Parenting Evaluator

Juliana's final challenge regarding the parenting plan rests on her contention that the trial judge failed to gather information required to make a plan reflecting J.'s best interests when it declined to appoint a parenting evaluator to assess Ethan. As with her assignment of error regarding failure to consider

- 10 -

Ethan's disparagement of her, much of Juliana's argument on this issue centers on a number of text messages that were admitted as trial exhibits. Ethan counters that Juliana's brief does not meaningfully develop the issue, the panel cannot properly review the issue because the record is incomplete, and Juliana did not properly move for the appointment of an evaluator.

Courts have wide discretion in the appointment of other parties who may assist the judge in reaching their rulings in family law matters, including evaluators, guardians ad litem, and others. RCW 26.09.220(1)(a) states,

> The court *may* order an investigation and report concerning the parenting arrangements for the child, or may appoint a guardian ad litem pursuant to RCW 26.12.175, or both. The investigation and report may be made by the guardian ad litem, court-appointed special advocate, the staff of the juvenile court, or other professional social service organization experienced in counseling children and families.

(Emphasis added). We review the trial court's decision to appoint a parenting evaluator for an abuse of discretion. *Cf. In re Parenting and Support of S.M.L.,* 142 Wn. App. 110, 117, 173 P.3d 967 (2007) (applying abuse of discretion to decision to appoint guardian ad litem pursuant to RCW 26.09.220(1)(a)).

Juliana's briefing cites to her response declaration filed on November 4, 2022 as the request for an evaluator at the heart of this issue. Ethan is correct as to the procedural fact that this request was presented to the trial court in the text of a declaration and not as a proper motion. Even more fatal here, however, is that she cites to clerk's minutes from a November 14, 2022 hearing on temporary orders to support her assertion regarding the court's denial of her request. Clerk's minutes are no substitute for a report of proceedings. *See State ex rel. Henderson*

*v. Woods,* 72 Wn. App. 544, 550, 865 P.2d 33 (1994). Further, Juliana does not suggest, much less establish by citation to the partial record she designated on appeal, that she ever made an oral or written motion to the court for the appointment of a parenting evaluator, apart from a passing request in a responsive declaration. She has simply failed to properly argue or support this assignment of error.

However, even if Juliana had filed an actual motion to appoint a parenting evaluator and presented the evidence and argument she now offers regarding Ethan's conduct, the trial court would have been within its discretion to decline such a request. As a preliminary matter, the plain language of the controlling statute indicates that the court "may" appoint someone to conduct an evaluation and prepare a report. Further, there was ample evidence on which the court here could draw to assess Ethan's parenting abilities. In addition to the text messages referenced in Juliana's opening brief, the judge considered Ethan's own declarations and trial testimony, a declaration and trial testimony from his mother, testimony of seven other witnesses presented by the parties, Juliana's declarations and testimony, and roughly 80 trial exhibits.[3] The trial court's independent assessment of Ethan's parenting is captured by the favorable findings included in the parenting plan, as discussed in Section I.A, *supra*. "The trial court's findings are given great weight on review because it is in a unique position to observe the

_____

[3] Again, we cannot assess the content of any of this testimony as Juliana declined to designate the report of proceedings for trial as part of the record on appeal. To the extent that her argument on this issue would necessitate such an examination, she has failed to carry her burden to establish error in part because of her strategic decision regarding designation and transmittal of this portion of the record. However, her reply brief makes clear that she believes this question, and the remainder of her assignments of error, can be resolved on the record that she chose to designate.

parties and their demeanor." *Fernando v. Nieswandt,* 87 Wn. App. 103, 108, 940 P.2d 1380 (1997). The court's robust findings with regard to the history and conduct of the parties as parents, as well as their respective bonds to J., indicate that it made a full evaluation of Ethan's parenting abilities, and did not require the assistance of an evaluator. Juliana has not demonstrated that the court abused its discretion when it declined to appoint a parenting evaluator.

III.    Child Support Order

Juliana challenges the child support determination on two separate bases, both couched in an alleged failure to adhere to the best interests of the child standard. First, she claims that the trial court erred when it imputed Juliana's income without evidence or findings that she is voluntarily underemployed, and it should have calculated it as "business income," which utilizes a formula distinct from imputation. Second, Juliana avers that because the determination that the parents should have equal residential time was in error, the downward deviation granted to Ethan based on that ruling was also erroneous. Ethan asserts that the trial court did not err, it needed to impute Juliana's income because she had not provided adequate documentation, and the downward deviation was properly applied because there was no error as to equal parenting time.

"We review child support orders for a manifest abuse of discretion." *In re Marriage of Kaplan,* 4 Wn. App. 2d 466, 484, 421 P.3d 1046 (2018). The court considers the "income and resources" of the parents to determine their support obligation. RCW 26.19.071(1). The parent's income is verified by tax returns,

current paystubs or "other sufficient verification" if the income is not otherwise recorded. RCW 26.19.071(2).

A.      Imputing Income

The trial court's decision to impute income is reviewed for abuse of discretion. *In re Parentage of O.A.J.*, 190 Wn. App. 826, 836, 363 P.3d 1 (2015). The court must impute the income of a parent "when the parent is voluntarily unemployed or voluntarily underemployed." RCW 26.19.071(6). This determination is

> based upon that parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, health, age, criminal record, dependency court obligations, and other employment barriers, record of seeking work, the local job market, the availability of employers willing to hire the parent, the prevailing earnings level in the local community, or any other relevant factors.

RCW 26.19.071(6). "[I]n the absence of records of a parent's actual earnings, the court shall impute the parent's income" through one of a variety of methods, including the one the court utilized here: the "[m]edian net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census." RCW 26.19.071(6)(a)(vi). If the court encounters difficulty determining a parent's income due to potential deception, "[i]t is consistent with the plain language of the statute and its underlying purpose to consider a parent who conceals income in order to escape [their] support obligation as voluntarily underemployed or voluntarily unemployed." *In re Marriage of Dodd*, 120 Wn. App. 638, 645, 86 P.3d 801 (2004). If the parent's situation is "analogous to voluntary

- 14 -

underemployment or voluntary unemployment" then imputing income based on census tables may be proper. *Id.* at 646.

Juliana fundamentally misunderstands the basis for the imputation of her income and asserts that the court did so because it concluded she was voluntarily underemployed. However, the final child support order indicates that her income was imputed because the judge concluded it was "unknown," and relied on the "table of median net monthly income" to arrive at the figure they imputed to Juliana. The parties submitted conflicting evidence regarding Juliana's income. Juliana provided screenshots of the transaction feed from her Venmo[4] account from December 1, 2021 through October 18, 2022 as proof that her average monthly net income was $1,094.44. Ethan submitted conflicting evidence of the deposits Juliana had made into their joint account, mostly from Venmo. He argued that her monthly net income should therefore be calculated at $3,952.12. Ethan's November 8, 2022 declaration asserted under penalty of perjury that Juliana often received cash payments from her clients that she did not otherwise report, but were reflected in the Venmo deposits into their bank account.

Here, the judge was not provided with evidence that conclusively established Juliana's income. The trial court appears to have found Ethan's claims about the possibility of deception, Juliana receiving cash for her services and not depositing or reporting it, at least somewhat credible because it concluded that the evidence Juliana presented was insufficient. Similarly, it did not simply accept Ethan's evidence or calculations either. The court instead exercised a statutorily

---

[4] Venmo is a digital financial application that allows person to person transfers.

authorized option, relied on the prescribed table, and imputed an amount of income it found reasonable under the circumstances. We conclude that such action was well within the court's discretion and the judge did not err by imputing Juliana's income.

B.      Downward Deviation

Juliana next avers that granting Ethan a downward deviation was improper because the parenting plan, which provided for equal parenting time, was in error. In response, Ethan contends the trial court's grant of a deviation was proper because it considered the parties' finances to assess the propriety of his request and expressly found that the "non-standard amount still gives the other parent's household enough money for the child's basic needs." Juliana's assignment of error frames the deviation as a downstream effect of the parenting plan; that Ethan was only granted a deviation because of the equal parenting time. We have already concluded that the trial court did not err when it entered a parenting plan with equal residential time. *See* Section I.A, *supra*. Thus, with this conclusion and in the absence of any other argument on this issue, we decline to consider this assignment of error further.

IV.      Spousal Maintenance

Juliana also assigns error to the denial of her request for spousal maintenance. She asserts the court "failed to properly value [her] support of the family while Ethan earned his degree" and this should have been considered to determine if spousal support was appropriate. In his brief on appeal, Ethan argues

that the judge conducted an adequate consideration of the statutory factors and distinguishes the case Juliana offers in support of her contention.

"The trial court exercises broad discretionary powers in awarding maintenance, and its disposition will not be overturned on appeal absent a showing of manifest abuse of discretion." *In re Marriage of Wilcox,* 3 Wn.3d 507, 517, 553 P.3d 614 (2024). The trial court has abused its discretion if its decision is "'manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* (quoting *Anthony,* 9 Wn. App. 2d at 563). RCW 26.09.090 authorizes the trial court to award spousal maintenance and provides the following relevant factors for consideration:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to [them], and [their] ability to meet [their] needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to [their] skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet [their] needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

"[N]o one factor is necessarily assigned more weight than the other and the court's paramount concern is instead the parties' 'economic condition[s]' postdissolution."

- 17 -

*Wilcox,* 3 Wn.3d at 523 (second alteration in original) (quoting *In re Marriage of Washburn,* 101 Wn.2d 168, 181, 677 P.2d 152 (1984)).

The first finding in the section of Attachment A entitled "Spousal Maintenance," FF 22, sets out the statutory factors in RCW 26.09.090. The court then applied those statutory factors to the case in FF 23 and 24. In FF 23, the judge found that the duration of the marriage was "between a short term to a medium term marriage (although admittedly, closer to a short-term one)" and noted that Ethan completed the "Master's in Teaching program" in one year and Juliana "testified she set aside her goal of going to law school" to assist Ethan and provide for the family during that time. FF 24 focused on the current and future earning capabilities of both parents. The court found that Juliana "has been and continues to be employed" and both Ethan and Juliana "are young and do not face any physical limitations" that would hamper future employment. The court also found that Ethan had continued, "from 9/1/22 through the present time," to pay for half of the monthly mortgage payments "despite the fact the mother lived in the home during this period." Perhaps most crucially, the judge found that Juliana and Ethan "will likely receive $200,000 or more" from the sale of the home. Juliana does not challenge any of these findings and, as such, they are verities on appeal. *See Anthony,* 9 Wn. App. 2d at 564.

Instead, Juliana's brief primarily relies on *Washburn* to support her claim for spousal maintenance. While *Washburn* does hold that supporting a spouse while they attain a degree can justify a later award of spousal maintenance, this does not mean the trial court acted outside its discretion when it denied Juliana's

request. 101 Wn.2d at 183-84. *Washburn* is unavailing here for two reasons. First, it is factually distinct. In *Washburn*, the wife had worked full time for four years while the husband had pursued his degree and then the following year while he completed an internship. *Id.* at 170-71. Here, Ethan pursued a one-year degree program, so the support Juliana provided was for a shorter period of time. Second, our Supreme Court revisited *Washburn* in *Wilcox* and expressly instructed that

> [a]t its core, *Washburn* stands for the proposition that in situations where one spouse supports the other spouse's economic undertaking with the mutual expectation of future financial benefit to the community, but the marriage ends before that benefit can be realized, that circumstance should be considered when awarding maintenance. *This is especially so where the assets of the parties are insufficient to permit fair compensation to be affected entirely through property division.*

3 Wn.3d at 525 (emphasis added). Here, Juliana and Ethan's assets are sufficient to permit fair compensation to both parties; they will each receive a substantial amount from the sale of the home and Juliana does not assign error to any other aspect of the property distribution, making an award to equalize the parties' postdissolution financial positions unnecessary. The trial court's decision was well within its discretion. It cited the statutory factors, considered the potential for the couple's assets to provide fair compensation to them both, and concluded that maintenance was unnecessary. Juliana does not establish error as to the court's denial of her request for spousal maintenance.

V. Order on Sale of Home

Juliana's final assignment of error goes to the trial judge's order on the sale of the family home. Ethan responds that Juliana has not provided meaningful

analysis or citations to authority in support of her position and urges us to conclude that she has thus waived this argument. He is correct. Juliana failed to cite to any legal authority regarding the trial court's order to sell the home and did not analyze why, on this record, the exercise of those powers would amount to an abuse of discretion. An assignment of error alone is not enough to compel our review. *In re Marriage of Hannah,* 27 Wn. App. 2d 577, 590, 541 P.3d 372 (2023), *review denied,* 2 Wn.3d 1015 (2024). Assignments of error must be supported by arguments and legal authority. *In re Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (2008); RAP 10.3(a)(6). Juliana fails to do either. Thus, we decline to consider this issue.

VI.    Attorney Fees

Ethan offers two bases in support of his request for attorney fees on appeal: that Juliana's appeal was frivolous and financial need due to his limited resources. RAP 18.1(a) establishes that a party requesting fees must provide the applicable law that supports such a request and subsection (b) requires that the requesting party further "devote a section of its opening brief to the request for fees or expenses." Ethan correctly cites to both RAP 18.1 and 18.9, the latter of which permits an award of fees as a sanction for a frivolous appeal. "An appeal is not frivolous if it raises even one debatable issue 'upon which reasonable minds might differ.'" *In re Committed Intimate Relationship of Muridan,* 3 Wn. App. 2d 44, 65, 413 P.3d 1072 (2018) (quoting *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.,* 170 Wn.2d 577, 580, 245 P.3d 764 (2010)). While she does not prevail, Juliana's appeal was not so devoid of merit as to render it frivolous.

Ethan also cites to RCW 26.09.140 as a separate basis for an award of attorney fees on appeal and properly filed an affidavit of financial need in support of his request. Among other things, RCW 26.09.140 authorizes the appellate court, "in its discretion, [to] order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." However, this court has constrained fee awards under that statute to circumstances where the financial declaration establishes a financial need or disparity in resources between the parties. *See In re Marriage of Condie*, 15 Wn. App. 2d 449, 474, 475 P.3d 993 (2020); *In re Marriage of Raskob*, 183 Wn. App. 503, 520-21, 334 P.3d 503 (2014). Because Ethan's financial declaration establishes that he has sufficient resources at his disposal, we decline his request for attorney fees on appeal.

Affirmed.

_____

WE CONCUR:

_____, ACJ