[No. 39614-5-I.    Division One.    July 20, 1998.]

THOMAS MERLE RHINEVAULT, *Appellant*, v. SHARON ANNE RHINEVAULT, *Respondent*.

*Robert E. Prince* of *Prince, Kelley, Marshall & Coombs, P.S.*, for appellant.

*Diane L. Vanderbeek*, for respondent.

WEBSTER, J. — Thomas Merle Rhinevault was confined to the King County Jail for failing to comply with the court's orders for child support and arrearages. He argues the court's contempt authority does not extend to child support arrearages reduced to judgment once his children reach majority, and his confinement was an impermissibly punitive sanction. We disagree. The trial court did not abuse its discretion; his imprisonment was a remedial sanction serving a coercive purpose, and by the terms of his dis-

solution decree Rhinevault was responsible for the ongoing support of his adult, mentally disabled son.

## FACTS

Sharon Anne Rhinevault and Thomas Merle Rhinevault were divorced in 1980. Their dissolution decree required Mr. Rhinevault to pay $200 in monthly child support for Christopher, their mentally disabled son, throughout the entirety of his lifetime. Mr. Rhinevault was also responsible for the parties' son Jason at $200 monthly, until he reached eighteen years of age or finished high school, whichever occurred later.

In August 1989, the Rhinevaults stipulated to findings and conclusions and an order for contempt against Mr. Rhinevault for his failure to pay child support as required by the dissolution decree. At this time, the principal amount owed, with interest, totaled $62,064.09. Despite his ability to meet this obligation with earnings as a land developer and platter, Mr. Rhinevault paid only $4,522 from 1980 to 1989. Consequently, he was held in contempt of court, but no judgment of record was reflected with the county and sanctions were deferred as long as Mr. Rhinevault strictly complied with every one of the agreed order's terms and conditions. These included compliance with detailed payment schedules and providing Mrs. Rhinevault with a full and complete accounting of all land development and platting projects.

But Mr. Rhinevault did not comply. Thus, on October 5, 1993, Sharon Rhinevault successfully obtained a judgment against Mr. Rhinevault for arrearages, interest, costs, and attorney fees totaling $93,570.75. The court also found that Mr. Rhinevault owed a continuing duty of support to Christopher and placed the burden of proving his lack of dependency on Mr. Rhinevault. The court deferred a contempt finding at that time.

Because of Mr. Rhinevault's continuing pattern of noncompliance, in December 1993 Court Commissioner Harry

Slusher found Mr. Rhinevault in contempt for not paying moneys required by the October 5 order, including child support for Christopher. Rhinevault also failed to provide bank records and information about his real property transactions. The court ordered him to pay $4,000 or face incarceration. Although not documented in the record, Mrs. Rhinevault asserts Mr. Rhinevault made this payment. Then in June 1994, the court again found Rhinevault in contempt of court because he did not pay forty percent of his net income to Mrs. Rhinevault as required by the court's December 1993 order. Commissioner Slusher once more threatened jail time for noncompliance.

On July 25, 1996, Commissioner Slusher again found Mr. Rhinevault in contempt. Rhinevault made no payments since November 1995 and provided neither "status reports" for his business nor any proof of income. Consequently, the court confined Rhinevault until September 12 or until he purged the contempt by "[p]aying the entire judgment, interest and costs, or paying $25,000.00 toward same . . . ." This payment would result in immediate release. But four days later, Rhinevault successfully moved for release, and the order was stayed pending a revision hearing. At this hearing held on August 21, 1996, the court refused to revise Commissioner Slusher's order except that no further confinement was ordered as it would "not appear to add to the likelihood that the judgment will be paid."

Mr. Rhinevault again appeared before Commissioner Slusher on October 2, 1996. The court found Rhinevault failed to comply with earlier lawful court orders relating to child support and arrearages by refusing to pay, despite his ability to do so. Thus, the court imposed jail time, providing for immediate release upon paying $12,000 to Mrs. Rhinevault. Mr. Rhinevault was released from jail six days later, after he paid $5,000.

This latest contempt order issued by Commissioner Slusher was reviewed by Judge Learned upon Mr. Rhinevault's motion. Judge Learned upheld the order, concluding

the court's contempt authority extends to enforce support arrearages despite a child's reaching majority, and the contempt sanctions imposed were remedial. The court then ordered Rhinevault to serve his remaining jail time or pay another $5,000. Paying this money while in jail would also provide immediate release. Rhinevault appeals this order.[1]

## DISCUSSION

■■ We begin our discussion noting that the appellant bears the burden of complying with the Rules of Appellate Procedure (RAP) and perfecting his record on appeal so the reviewing court has before it all the evidence relevant to deciding the issues before it. *See In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). The court may decline to reach the merits of an issue if this burden is not met. *See State v. Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993).

■ Moreover, the RAP mandate strict requirements for content, style, and form for all briefs filed with the appellate court. *See* RAP Title 10. For example, every factual statement included in an appellant's brief must be supported by citation to the record. *See* RAP 10.3(a)(4). If a party submits a brief failing to comply with this rule, the appellate court may return it for correction, strike it with leave to file a replacement, or accept the brief. *See* RAP 10.7. Sanctions ordinarily adhere for such inadequate briefing. *Id.*; *see, e.g., Hurlbert v. Gordon*, 64 Wn. App. 386, 400-01, 824 P.2d 1238 (1992) (imposing $750 in sanctions for "laissez-faire" briefing, as errors "hampered the work of the court"); *Lawson v. Boeing Co.*, 58 Wn. App. 261, 271, 792 P.2d 545 (1990) ("The failure to cite to the record is not a formality. It places an unacceptable burden on opposing counsel and on this court.").

Here, the record designated for appeal by Mr. Rhinevault

---

[1]Mr. Rhinevault first filed an emergency motion for discretionary review with this court. We denied this motion without limiting Rhinevault's right to appeal in the ordinary course. Consequently, Rhinevault filed a motion for discretionary review with the Supreme Court, which also denied review.

is replete with glaring omissions given the nature of the order appealed. In particular, he did not designate the dissolution decree nor the four orders relating to child support and arrearages upon which the contempt order relies. And although Mr. Rhinevault bears the burden of perfecting the record on appeal, Mrs. Rhinevault may also supplement it. Despite the obvious inadequacies, however, she did not file supplemental designation. Instead, both parties attached documents as exhibits to their briefs.

We are mindful that cases and issues will not be determined on the basis of compliance or noncompliance with the rules of appellate procedure except in compelling circumstances where justice demands, subject to the restrictions in RAP 18.8(b). RAP 1.2(a). Thus, although the designated record and briefing in this case teeter on a tightrope of inadequacy, with some difficulty we have gleaned an outline of the facts sufficient to resolve the issues before us.

Contempt of Court

Our child support enforcement laws were enacted in recognition of "an urgent need for vigorous enforcement of child support and spousal maintenance obligations." RCW 26.18.010. Although the legislature cited specific existing statutory remedies it wished to "supplement and complement," it did not intend this list to be exhaustive. RCW 26.18.010. Instead, the remedies provided in the act must be liberally construed and "are in addition to, and not in substitution for, any other remedies provided by law." RCW 26.18.030(1).

To effectuate this statutory purpose, courts may initiate contempt actions under RCW 7.21 against a spouse or parent who fails to comply with a support or maintenance order. *See* RCW 26.18.050. The court may use a contempt action to enforce a support or maintenance order until all of the obligor's duties accruing under the order have been satisfied. *See* RCW 26.18.050(5). This authority extends to arrearages. *Id.*

■ ■ According to Washington's contempt statute, it is

contempt of court if a person intentionally disobeys "any lawful judgment, decree, order, or process of the court[.]" RCW 7.21.010(1)(b). The sanctions available to the court may be either "punitive" or "remedial." A punitive sanction is imposed for a past contempt, while remedial sanctions coerce performance where the contempt involves a person omitting or refusing to perform an act yet in their power to perform. *See* RCW 7.21.010(2), (3). Thus, a sanction is punitive if there is a determinate sentence and no opportunity to "purge" the contempt. *See King v. Department of Soc. & Health Servs.*, 110 Wn.2d 793, 799, 756 P.2d 1303 (1988). But it is remedial where it is indeterminate and the contemnor is released upon complying with the court's order. *Id.* (citing *State v. Browet, Inc.*, 103 Wn.2d 215, 218, 691 P.2d 571 (1984)). A punitive sanction generally is imposed to vindicate the court's authority, while a remedial sanction typically benefits another party. *Id.* at 800.

Imprisonment is a remedial sanction available to the court, but may be imposed only so long as it serves a coercive purpose. *See* RCW 7.21.030(2)(a). This case-by-case determination rests within the trial court's sound discretion. *See King*, 110 Wn.2d at 802-03. Thus, it will not be disturbed on appeal absent abuse of that discretion. *See Schuster v. Schuster*, 90 Wn.2d 626, 630, 585 P.2d 130 (1978) (quoting *State v. Caffrey*, 70 Wn.2d 120, 122-23, 422 P.2d 307 (1966)).

Mr. Rhinevault's appeal rests on his contention that the trial court had no authority to imprison him for contempt because his obligations were reduced to judgment and his children reached majority. He also argues incarceration was a punitive sanction that required charges by the prosecuting attorney. We reject both assertions.[2]

First, the court's decision to imprison Mr. Rhinevault

---

[2]Because we uphold the contempt order under RCW 7.21 and 26.18.050, we need not address whether the order may also be upheld under the trial court's inherent contempt authority. *See State v. Hobble*, 126 Wn.2d 283, 303, 892 P.2d 85 (1995).

was not a punitive sanction. To determine whether a contempt sanction is punitive or remedial in nature, we examine both the substance of the proceeding and the type of relief it will afford. *See King*, 110 Wn.2d at 799. The record before us indicates the court gave Mr. Rhinevault ample opportunity to comply with its orders before confining him for contempt. The imprisonment was not determinative, as purging the contempt was within Mr. Rhinevault's power. He merely needed to pay part of the judgment to secure immediate release. And, when he was incarcerated, the sanction served its coercive purpose; Mr. Rhinevault made partial payments. Moreover, when the court believed additional jail time would not increase Mr. Rhinevault's likelihood of compliance, he was released pending subsequent review hearings. *Compare, e.g., In re Marriage of Haugh*, 58 Wn. App. 1, 6 (finding contempt order coercive where 10-day sentence would be suspended for compliance with visitation order), *with State v. Boatman*, 104 Wn.2d 44, 47, 700 P.2d 1152 (1985) (reversing child support contempt order where 10-day contempt sentence provided no opportunity to purge). Under these circumstances, we do not find the contempt sanctions were punitive, nor did the court abuse its discretion in imposing imprisonment only where its coercive force was served.

■ Neither does our Supreme Court's decision in *Dawson v. Dawson*, 71 Wn.2d 66, 426 P.2d 614 (1967), convince us otherwise; it is easily distinguished. Adopting the majority rule at that time, the Court held contempt proceedings improper to enforce nonpayment of child support owed to a divorced spouse once the children reach majority. *Id*. at 67-68. But unlike the facts in *Dawson*, in addition to arrearage obligations, Mr. Rhinevault was ordered to provide Mrs. Rhinevault with a full and complete accounting of all land development and platting projects. Neither does the record support Mr. Rhinevault's contention that his child support obligations terminated when his youngest son reached majority. The dissolution decree identifies the party's "mentally retarded son" and requires Mr. Rhinevault to pay for

Christopher's support for the entirety of his life. Mr. Rhinevault concedes that the settlement reached between he and Mrs. Rhinevault for his arrearages did not modify these provisions of the dissolution decree.[3] The record also lacks an order modifying child support. Thus, unlike *Dawson*, there is an ongoing support obligation to the Rhinevault's adult son. The sparse facts in *Dawson* do not justify extending its holding to prohibit contempt actions where the obligated spouse is under court order to provide financial accounting and, under a dissolution decree, owes lifetime support for a mentally disabled adult child.

`Costs and Attorney Fees on Appeal

■ Mrs. Rhinevault seeks costs and attorney fees on appeal under RCW 26.18.160:

> In any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees. An obligor may not be considered a prevailing party under this section unless the obligee has acted in bad faith in connection with the proceeding in question.

RCW 26.18.160. This rule encompasses both actions at trial and on appeal. *See In re Marriage of Capetillo*, 85 Wn. App. 311, 932 P.2d 691, *review denied*, 132 Wn.2d 1011, 940 P.2d 654 (1997). Because we decide this appeal in Mrs. Rhinevault's favor, she is entitled to such an award without showing financial need or Mr. Rhinevault's ability to pay. *See In re Marriage of Anderson*, 49 Wn. App. 867, 746 P.2d 1220 (1987). Accordingly, we award her reasonable costs and fees, provided she complies with RAP 18.1.

Affirmed.

---

[3]In his brief, Mr. Rhinevault claims that this settlement set his support obligation for Christopher at $75 monthly, paid to Christopher's current residential custodian. But we find nothing in the record or in the settlement agreement attached as an exhibit to Mr. Rhinevault's brief to support this statement. Even if it were the case, it evidences an ongoing child support obligation to support his adult, yet dependent, child.

GROSSE and COX, JJ., concur.

Review denied at 137 Wn.2d 1017 (1999).