# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parenting and Support of<br><br>N.F.,<br><br>　　　　　　　　　　　　Minor child,<br><br>MISSIAH PATRICIA ANN THORNTON,<br><br>　　　　　　　　　　　　Appellant,<br><br>　　　v.<br><br>DA'QUAN JAMAL FORBES,<br><br>　　　　　　　　　　　　Respondent. | No. 59953-8-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—Missiah Thornton and Da'Quan Forbes are the parents of NF, who was born in 2016. In September 2023, the trial court entered a parenting plan allowing NF to relocate to the United States Virgin Islands with Forbes. NF would visit Thornton in Washington during the summers.

Thornton moved for a major modification of this parenting plan, seeking primary residential care of NF. To support her motion, Thornton relied on allegations NF made before moving to the Virgin Islands while she was in Forbes' care in Washington, stating another child in the home had sexually assaulted her. Thornton claimed that Forbes did not properly care for NF's physical, emotional, or scholastic needs when she lived in Washington.

The trial court concluded that Thornton had not shown adequate cause to hold a full hearing on whether to make a major modification to the parenting plan. In its order, the trial court relied in part on the Department of Children, Youth, and Families' decision not to take action regarding NF after investigating the sexual assault allegation. The trial court also noted that Thornton had not addressed parenting restrictions imposed on her in a prior parenting plan.

Thornton moved for reconsideration of the trial court's order denying adequate cause, which the trial court denied. The trial court made further findings that NF's sexual assault allegation was ambiguous and Forbes did not intentionally neglect NF's care. Thornton moved for revision of the order denying reconsideration, and the superior court denied her motion.

On appeal, Thornton argues that the trial court abused its discretion by relying on the Department's lack of action. Thornton also contends that the remainder of the trial court's findings are not supported by substantial evidence and the trial court abused its discretion by denying adequate cause. Finally, Thornton claims that the trial court erred by considering her prior parental restrictions when denying adequate cause for a major modification of the parenting plan.

We conclude that the trial court did not err by considering the Department's actions in the context of all the evidence before it, and its other findings were supported by substantial evidence. Because the trial court's findings were not improper and independently supported its denial of adequate cause, we need not reach the issue of whether the trial court erred by considering Thornton's prior parenting restrictions. Accordingly, we affirm.

FACTS

I. Background

Thornton and Forbes are the parents of NF, who was born in July 2016. Thornton was pregnant with NF when she was 14 years old and Forbes was 23 years old. Thornton became NF's primary residential parent in December 2019.

A.     Initial Parenting Plans

In December 2020, the trial court entered a parenting plan designating Thornton as NF's primary residential parent and limiting visitation for Forbes.[1] The parenting plan imposed restrictions on Forbes under RCW 26.09.191 (.191 restrictions) because he had recently only had "'minimal contact'" with NF and needed supervision to "'re-establish [his] bond with the child.'" Clerk's Papers (CP) at 282 (quoting record). The plan provided that the trial court would revisit the residential schedule in June 2021.

In August 2021, the trial court revisited the parenting plan after a trial. The trial court entered a new parenting plan making Forbes NF's primary residential parent and limiting Thornton's residential time with NF to the weekends.

The plan imposed .191 restrictions on Thornton for failing to communicate with Forbes according to the prior parenting plan, failing to give NF to Forbes during his visitation periods, making false police and child protective services (CPS) reports, and physically assaulting Forbes during drop-offs.

---

[1] We do not have this parenting plan, nor any other parenting plan, in our record on appeal. When describing what the parenting plans ordered, we have relied on other evidence in the record or undisputed aspects of the parties' descriptions.

B.      Thornton's Motion for Contempt Against Forbes

More than a year later, on November 21, 2022, Thornton filed a motion for contempt against Forbes. Thornton stated that Forbes had not replied to her messages as required under the parenting plan and was withholding NF. Thornton wrote that she had not seen NF since July 2022. She also said that Forbes had not informed her of his decision to withdraw NF from her school. Thornton attached several pieces of evidence to her motion:

- A letter from NF's school confirming that NF, who was almost 6 years old, was withdrawn from the school in June 2022.[2]
- A message from Thornton to Forbes in September 2022 stating that NF needed to go to the dentist because she was in pain.
- A photograph of NF's mouth with a visible hole in one of her teeth.
- Messages from Thornton to Forbes asking when NF had last been to the dentist and counseling. In a message Forbes viewed in July 2022, Thornton stated that NF's dentist said she had last been to the dentist nine months before.
- Messages from Thornton to Forbes in July 2022 without responses requesting that Forbes drop off NF per the parenting plan.

On November 23, 2022, the Department received an intake stating that NF disclosed she had been touched inappropriately by another child in Forbes' girlfriend Serenity's house. The Department initially removed NF from Forbes' care so Thornton could have NF medically examined.

On November 30, 2022, Thornton moved for an immediate restraining order against Forbes. Thornton stated that Forbes failed to have NF medically examined after the sexual assault allegation. Thornton also claimed that Forbes attacked her at Mary Bridge hospital while she was trying to get NF examined.

---

[2] In a later pleading, Thornton acknowledged that Forbes had enrolled NF in a different school after this withdrawal.

On December 2, 2022, the Department held a family team decision making meeting with Thornton and Forbes. At that meeting, Thornton again raised her concerns about NF's dental care, counseling attendance, and school performance. Thornton stated that NF was "scared" and had recently started urinating in bed. CP at 144. The Department's meeting report noted that while Forbes said NF was going to counseling, he did not produce evidence of her attendance. Forbes also said that NF had been to the dentist in the last several months, and the dentist had recommended monitoring the hole in her tooth with the hope it would be resolved when the tooth fell out.

> The report also stated that the Department
>
> received numerous reports that father is not often caring for [NF], but is leaving her in the care of others. For example, he was having [Serenity] [] watch [NF] during the last summer, who reported that he was having her watch [NF] almost all of the time, and social worker Janelle Frazer found 16 year old [DR] and her boyfriend watching [NF] when she went to pick her up this last week. There are numerous reports that the father is leaving [NF] in the care of others for most of the day and has locked her in the bathroom as well.

CP at 144.

At the meeting, a former social worker on the case expressed concern about NF witnessing Forbes being violent with Thornton during drop-offs and pick-ups. Thornton also stated that Forbes hit her at the hospital when she took NF in to be examined for sexual assault. In contrast, Forbes stated that it was Thornton who hit him in the chest.

Regarding the sexual assault allegation, the Department's report noted that NF initially said a child in Serenity's home had "put his penis in her butt." CP at 145. During a forensic interview, NF "gave a clear, detailed, and credible statement that she had been touched inappropriately" by children in Serenity's home. *Id.* NF also gave similar statements to others, including another social

worker. The report noted that "other children that have been in Serenity's home have reported stories similar to [NF's]." *Id.*

According to the report, Forbes reported to a social worker that he took NF to Mary Bridge hospital regarding the sexual assault allegation. However, he did not have her examined because at the hospital NF "then said that it didn't really happen." *Id.* At the Department meeting, Forbes "expressed concern that [NF] was saying things to get other children in trouble." *Id.* Forbes said that he had kept NF from the child that allegedly assaulted her since May 2022.

Based on this report, the Department requested that NF not have contact with Serenity or children in Serenity's home. The Department ultimately concluded that Thornton and Forbes should "follow [the] court ordered parenting plan" and meet at the police station for drop-offs and pick-ups. *Id.*

On December 5, 2022, Thornton filed several additional pieces of evidence with the trial court supporting her pending motion for contempt:

- An email from NF's school in September 2022 stating that NF did not show up to school on Friday, so Thornton could not pick her up for her scheduled residential time. The email also said that Forbes told the school Thornton could no longer receive NF's records.
- Several pages of notes from NF's counseling sessions and a letter from a counseling service dated August 2022 that said NF's last counseling session was in April 2022.
- A letter from NF's dentist dated August 2022 stating that NF was last seen in May 2021.
- The Department's report from the family meeting.

On December 22, 2022, Thornton filed a declaration and attached messages between August and December 2022 where Thornton stated Forbes had not dropped off NF per the parenting plan. The declaration also included a school report card from November 2022 showing that NF scored below expectations in all the categories assessed.

On December 27, 2022, a superior court commissioner found Forbes in contempt for failing to follow the parenting plan schedule. The commissioner imposed a $100 civil penalty and required that Forbes follow the parenting plan schedule and give Thornton extra time with NF to make up for the time missed.

C.    Thornton's First Motion for Modification of the Parenting Plan

In March 2023, Thornton, who was unrepresented, filed a motion for modification of the August 2021 parenting plan. Though it is not in our record, the parties seem to agree that the trial court entered an order in June 2023 dismissing Thornton's motion for modification of the parenting plan without prejudice for improper service.

D.    Forbes' Motion to Relocate

In August 2023, Forbes sought permission from the trial court to relocate with NF, and Thornton did not respond. In September 2023, the trial court entered a new parenting plan allowing Forbes to move to the Virgin Islands with NF, where Forbes' mother and extended family live. According to the parties, the parenting plan contemplated that NF would return to Washington for most of each summer to live with Thornton, but the parenting plan did not establish specific dates. It appears this parenting plan was the most recent one that the trial court entered before Thornton's motion for modification.

E.    Thornton's Motion to Vacate the Prior Order Dismissing Her Motion for Modification

In December 2023, Thornton moved to vacate the order dismissing her March 2023 motion for modification of the August 2021 parenting plan. She argued that the dismissal was entered due to mistake and excusable neglect because Thornton "made multiple attempts at service but did not

understand why her proof was deficient." CP at 219. Thornton attached a message from Forbes in October 2023, stating, "Btw if you haven't heard by now I'm in the Virgin Islands." CP at 221.

Thornton also filed more than 50 pages of CPS intake reports about herself, Forbes, and NF spanning many years, dating up to July 2023. In one of these intakes from December 1, 2022, a CPS supervisor said that while NF was at the hospital with Thornton to be examined for potential sexual assault, Forbes and Thornton had an argument and Forbes said "'I didn't rape her, my friend raped her.'" CP at 15. The supervisor also stated that Forbes punched Thornton in the face during this argument. The intake said that the supervisor received this information from Thornton during a meeting. However, the supervisor confirmed Forbes' statement that "'my friend raped her'" with hospital staff. *Id.* The supervisor stated she was not sure about "the context of the conversation between the parents . . . when the father made the statement." *Id.* One intake from around the same time also noted that Serenity said NF had been watching pornography.[3]

Thornton also filed a declaration including a screenshotted message from Forbes in 2023, where he said that he was "giving" NF to Thornton because he "legitimately cannot take care of her right now I have something going on. I am going home because something happened." CP at 229. Forbes expressed frustration regarding coparenting with Thornton and said, "I'm not fighting clearly you want her back. I'm struggling you can have her back." *Id.* It appears that NF lived with Thornton for a short time after these messages. The declaration also included a message from

---

[3] There are multiple allegations in these intakes, including concerns that both Forbes and Thornton were violent or threatened violence to each other and NF. By design, there is often little or no information about the person making the report. The Department found some of these allegations unfounded, but it is unclear from our record whether the Department made any founded findings or took any actions as a result of the remaining allegations.

Forbes later in 2023 indicating that Forbes had not transferred NF to her for visitation because he and NF were both sick.

In February 2024, the trial court denied Thornton's motion to vacate the order dismissing her March 2023 motion for modification of the August 2021 parenting plan.

F.      Thornton's Motion for Modification of the September 2023 Parenting Plan Allowing Forbes to Take NF to the Virgin Islands

In March 2024, Thornton brought another motion for modification, this time of the September 2023 parenting plan allowing Forbes to move with NF to the Virgin Islands. To support modification, Thornton had to demonstrate that Forbes' circumstances had changed substantially and that NF's present environment was detrimental to NF. RCW 26.09.260(1), (2)(c).

Thornton cited the alleged sexual assault of NF by another child at Serenity's house and Forbes' failure to report it. Thornton also stated that Forbes had not allowed her to contact NF for four months after they moved to the Virgin Islands. Thornton claimed that when she finally did speak to NF, Forbes was present on video calls and NF would only respond to Thornton's questions with a "silent thumbs up or down." CP at 239. Thornton further claimed that Forbes had violated the September 2023 parenting plan, which still provided for joint decision making, by failing to list Thornton as a contact for NF's school and failing to provide Thornton with NF's medical or school records. Thornton challenged the parenting plan because it did not specify when NF would see Thornton during the summers. Finally, Thornton asserted that Forbes falsely claimed that he served her with a notice of his relocation to the Virgin Islands, when in fact he only served her with a blank piece of paper. Thornton requested sole decision making and majority residential time.

Forbes responded with a declaration stating that he failed to properly fill out the September 2023 parenting plan, which was supposed to include specific residential time for Thornton with NF during the summers. Forbes stated that Thornton had not spoken to NF for nearly a year, including the time since NF moved to the Virgin Islands. Forbes claimed that he tried to set up visits and phone calls between Thornton and NF before they left for the Virgin Islands and Thorton did not show up. Forbes reported that since the move, he had seen NF "actually start to thrive and enjoy school" and he had seen "an improvement in her math and reading skills." CP at 260. He said that his mother was very established in the Virgin Islands' community and so were members of his family on "the different islands." *Id.* Thornton replied that when she attempted to call NF in the Virgin Islands, the cellular service was bad or Forbes said she needed to call back another time.

A superior court commissioner held a hearing on Thornton's motion. After hearing from both parties, the commissioner found there was not adequate cause to hold full modification hearing, so he denied the motion requesting a major modification to the parenting plan. However, the commissioner determined that there was adequate cause to make a minor modification to the parenting plan in order to establish Thornton's residential time with NF during the summers. The commissioner wrote:

> Under RCW 26.09.060(7), the court finds that the mother has not demonstrated a substantial change in circumstances specifically related to the basis for the limitation under RCW 26.09.191. The parenting plan entered on August 3, 2021 included .191 restrictions which were later incorporated into the court's order of September 7, 2023 by reference. To whit, the court found: a) Assault—Missiah Thornton (or someone living in that parent's home) has assaulted someone; b) Abusive use of conflict—*Missiah Thornton* uses conflict in a way that may cause serious damage to the psychological development of a child listed in 2; and 3) Missiah Thornton has kept the other parent away from a child listed in 2 for a long time, without good cause. This finding is made without prejudice to any future petition for a major modification, and the court notes the mother is free to bring a motion for reconsideration or a motion for revision.

10

The mother has also failed to meet her burden to show a substantial change in circumstances as to the Respondent or the child. The court notes that there was a visit to Mary Bridge, and a comment by the father regarding a possible sexual assault of the child; however, the court notes that CPS did not take action to remove the child or file any action following these events. The court also notes that the father filed an affidavit of service signed under penalty of perjury that indicates the mother was served with his notice of intent to relocate. The Court found that Petitioner's claim to have been served with a blank piece of paper to not be credible.

CP at 269.

G.      Motion for Reconsideration

Apparently to support reconsideration, Thornton then filed a declaration from a Department employee and an attached email from the employee to Thornton and her attorney. The employee was working with the child who allegedly sexually assaulted NF. The employee was not the CPS supervisor on NF's case but consulted with NF's team. The employee wrote,

It was thought that with [the notes from the family team meeting], and allegations outlined, that the family court could make the ruling when Ms. Thornton petitioned the court to change custody via the active parenting plan. We knew that a family court hearing could be more immediate, [than] what our CPS investigation would allow, and if we would need to file for dependency action. Again I can't speak to the work and decision for CPS team, and *why in the end, the case was unfounded*. Please know CLEAR concerns existed for Mr. Forbes, and that we deemed Ms. Thornton['s] home to be safe, and for her to be [a] protective and stable parent.

CP at 272 (emphasis added). The employee recommended that Thornton request an official case review by senior officials at the Department for more clarity.

A few days later, Thornton moved for reconsideration of the commissioner's decision denying adequate cause to make a major modification to the parenting plan. In her reconsideration motion, Thornton reiterated her concerns about Forbes' parenting. She also argued that a trial court's consideration of whether the moving parent had addressed their .191 restrictions is limited

to requests for minor modifications of the parenting plan. *See* RCW 26.09.260(7). Thornton

included several new documents to support her motion:

- Notes from NF's sexual abuse consultation on November 30, 2022. The nurse practitioner who conducted the consultation wrote that NF said while she was sleeping at Serenity's house, another child "'got on top of'" her, kissed her face, and told her not to tell any adults. CP at 69. NF further stated that the other child touched her legs and bottom with "'[h]is side.'" *Id.* NF stated that she told Forbes and Serenity about this encounter. NF had a normal genital examination at the consultation, though the nurse practitioner noted that this result did not rule out the possibility of sexual assault.
- Report cards from March and June 2023 showing that NF scored below expectations in all the categories assessed.
- Notes from a school meeting with Forbes and Thornton in May 2023 assessing if NF needed to be evaluated for special education services. The school determined that they would try traditional interventions and continue to monitor NF's progress.
- Messages between Forbes and Thornton from January and February 2024 showing that Thornton attempted to call NF several times during that time period, but the service was bad or Forbes misstated NF's availability.
- A photograph of Thornton with a black eye and an email from a nurse practitioner stating that Thornton said she was assaulted by Forbes' girlfriend in November 2021.
- Documents showing that Thornton was employed in April 2024 and was enrolled in community college for the spring semester.
- A letter showing that Thornton started therapy in May 2024.

The trial court commissioner denied Thornton's motion for reconsideration. The

commissioner included the following "further" findings:

> In November of 2022, the mother asserts allegations of sexual abuse of the child while in the father's care. These allegations concern an 8-year-old boy kissing the parties' minor daughter on the face. There was also a vague allegation from the anonymous CPS referrer that the father had exposed the child to pornography.
>
> In November of 2022, CPS removed the child from the father's care and took the child to Mary Bridge Hospital for examination. Mother alleged the child disclosed additional abuse by the 8-year-old boy, but the minor child was examined and interviewed by the [hospital]. The child did not disclose any additional acts other than the kissing. Additionally, the child was found to have a normal physical and genital examination at [the hospital]. There was an alleged incident at the hospital between the mother and the father. It is alleged that the father stated to the mother, "'I did not rape her, my friend raped her.'" It is unclear from the CPS records what

the context of this statement refers to and when in the context of the incident it was made by the father.

There are allegations the mother was 14 years old when the Respondent/Father began dating the mother and the father was an adult at the time. At the recommendation of [the hospital], the child was returned to the father's care. Of the additional 55 pages of CPS records provided by the mother only 13 pages concern allegations made after the parties' custody trial in August of 2021. These records do not support a substantial change in the circumstances of the non-moving party (father) of the child. The school record and medical records do not demonstrate the father has intentionally or purposely failed to address the child's [medical] or scholastic needs. The child was removed from counseling by the father; however, the father provided the child's therapy records evincing the child was in therapy for most of 2022 and 2023. In November of 2021, the father has been held in contempt for failing to deliver the child to the transit center for exchange. There is no indication the father is intentionally withholding the child from the mother for visitation purposes. The father has since moved the child, pursuant to a relocation motion, to the Virgin Islands. The mother claims the father is withholding the child from her. The mother is scheduled for contact with the child during the summer months.

CP at 316.

H.    Motion for Revision

Thornton then moved for a superior court judge to revise the commissioner's decision. The superior court judge denied the motion for revision without additional findings or reasoning. Thornton appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's grant or denial of adequate cause to modify a parenting plan for an abuse of discretion. *In re Parentage of Jannot*, 149 Wn.2d 123, 128, 65 P.3d 664 (2003). We also review a trial court's decision granting or denying a motion for reconsideration for an abuse of discretion. *City of Longview v. Wallin*, 174 Wn. App. 763, 776, 301 P.3d 45 (2013). "When an appeal is taken from an order denying revision of a court commissioner's decision, we review the

superior court's decision, not the commissioner's." *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). But a denial of revision "constitutes an adoption of the commissioner's decision." *Id.* at 27-28. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).

Where the trial court has weighed evidence related to an adequate cause motion, we do not reweigh the evidence ourselves and instead consider whether the findings of fact are supported by substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003); *Jannot*, 149 Wn.2d at 125-28. "'Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Lesinski & Mienko*, 21 Wn. App. 2d 501, 514, 506 P.3d 1277 (2022) (internal quotation marks omitted) (quoting *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011)).

Here, the trial court commissioner found facts in its order denying major modification, and it made further factual findings in its order denying reconsideration. The trial court judge then denied revision without further reasoning. As a result, we review the substance of the commissioner's findings and conclusions in its order denying modification and order denying reconsideration.

The appellant has the responsibility to perfect the record on appeal "so the reviewing court has before it all the evidence relevant to deciding the issues." *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998); *see* RAP 9.2(b). We may decline to reach the merits of an issue if the appellant has not provided an adequate record for review. *Rhinevault*, 91 Wn. App. at

692. However, we avoid deciding cases based on noncompliance with the rules of appellate procedure except in compelling circumstances. *Id.* at 693.

## II. REQUIREMENTS FOR MODIFICATION

A.      Legal Principles

RCW 26.09.260(1) states that a trial court generally shall not modify a parenting plan unless it finds that "a substantial change has occurred in the circumstances of the child or the nonmoving party." The statute further explains that trial courts must keep the existing residential schedule established by a parenting plan except in enumerated circumstances, including if the child's "present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c).

Under RCW 26.09.260(1), when assessing whether to modify a parenting plan, trial courts may rely only on facts that have arisen since the parenting plan was entered or that were unknown to the court at the time of the parenting plan. Forbes does not argue that any of the evidence Thornton relied on to support major modification was already known to the court before entry of the September 2023 parenting plan such that it should not be considered to support modification.

There is a strong statutory presumption against modifying residential schedules in parenting plans because such changes can be highly disruptive to children. *In re Marriage of MacLaren*, 8 Wn. App. 2d 751, 771, 440 P.3d 1055 (2019). Because of the statutory focus on finality and stability for the child, a party moving to modify a parenting plan must satisfy a heavy burden before a hearing is even scheduled. *Id.*; RCW 26.09.270. The moving party must submit an affidavit "setting forth facts supporting the requested order or modification," and the other party

may file an opposing affidavit. RCW 26.09.270. In their affidavit, the moving party must show "adequate cause for modification before the court will permit a full hearing on the matter." *In re Marriage of Zigler & Sidwell*, 154 Wn. App. 803, 809, 226 P.3d 202 (2010).

To show adequate cause to warrant a full hearing, the moving party "must set forth facts and provide supporting evidence—not self-serving or conclusory statements—" that would support modification under RCW 26.09.260. *MacLaren*, 8 Wn. App. 2d at 774. At a minimum, adequate cause requires evidence that supports "'a finding on each fact that the movant must prove in order to modify.'" *Id.* at 773 (internal quotation marks omitted) (quoting *In re Custody of E.A.T.W.*, 168 Wn.2d 335, 347, 227 P.3d 1284 (2010)).[4] The trial court should consider and weigh "the facts alleged by the parties in the affidavits, the evidence, and other factors on a case-by-case basis" when determining whether adequate cause exists to hold a parenting plan modification hearing. *Id.* at 774.

The Washington Supreme Court has acknowledged that parenting plans are "individualized decisions that depend upon a wide variety of factors, including 'culture, family history, the emotional stability of the parents and children, finances, and any of the other factors that could bear upon the best interests of the children.'" *Jannot*, 149 Wn.2d at 127 (quoting *In re Parentage of Jannot*, 110 Wn. App. 16, 19-20, 37 P.3d 1265 (2002)). Because these decisions are fact intensive, "a trial judge does stand in a better position than an appellate judge" to determine

---

[4] In her reply brief to this court, Thornton argues that when assessing an adequate cause motion, courts should assume that the moving party's allegations are true. However, Washington courts have held that this is not an accurate description of the burden of proof. *MacLaren*, 8 Wn. App. 2d at 774 ("the burden of showing adequate cause requires more than allegations that if proved true, would establish a prima facie case supporting modification").

whether the submitted evidence establishes adequate cause to modify a parenting plan, even though the evidence is all documentary at this stage. *Id.* at 126.

In *MacLaren*, Division One held that a parent's refusal to engage her child in treatment despite uncontroverted evidence of an autism diagnosis and suicidal ideation constituted adequate cause to make a major modification to a parenting plan. 8 Wn. App. 2d at 776-78. Incidents of domestic violence can also constitute adequate cause to modify a parenting plan. *Zigler*, 154 Wn. App. at 814. Additionally, supported claims of physical, sexual, or emotional abuse can warrant an adequate cause hearing. *MacLaren*, 8 Wn. App. 2d at 772.

B.      Consideration of the Department's Decisions

Thornton argues that the trial court erred when it gave weight to the Department's decision not to remove NF from her father's care or initiate a dependency in response to the allegation that NF was sexually assaulted by another child in Serenity's house. The trial court acknowledged the sexual assault allegation but noted that the Department "did not take action to remove the child or file any action following these events." CP at 269. Thornton contends that the trial court erred by relying on the Department's decision not to file a dependency action after the December 2022 family meeting. We disagree.

To support her argument that the trial court erred, Thornton cites to both the Department's family meeting report assessing the sexual assault allegation and the declaration and email from a Department employee stating that the Department thought a court hearing regarding the parenting plan may provide more immediate results than a CPS investigation. *See* CP at 144, 272. However, as the trial court noted, while the Department's report stated concerns about the alleged sexual assault and Forbes' supervision of NF, the Department ultimately decided not to remove NF from

Forbes' home or file a dependency, effectively keeping Forbes as the primary residential parent under the then-existing parenting plan. [5]

Additionally, the email from the Department employee—which was not before the trial court when it made its initial decision denying adequate cause—stated that the Department had concerns about Forbes' care of NF but also said that the employee did not know why the Department ultimately decided "the case was unfounded" and opted not to act. CP at 272.

In her briefing on appeal, Thornton cites no cases holding that it is error for a trial court to consider the Department's involvement and decisions when assessing a motion for major modification of a parenting plan. Thornton was able to provide evidence that reflected some of the nuance in the Department's decision making, and the trial court was justified in considering all of this evidence in context. Accordingly, the trial court did not err when it considered the Department's decision not to remove NF or initiate a dependency as evidence supporting its decision not to allow major modification.

C.     The Trial Court's Other Findings

Thornton contends that the trial court abused its discretion by ignoring Thornton's evidence of substantial changes in Forbes' circumstances that would be detrimental to NF's physical, mental, or emotional health. We disagree.

Thornton cites the following facts as evidence of Forbes' change of circumstances and reasons for major modification:

- Forbes did not have NF examined after the allegation of sexual assault.
- Medical staff at the hospital reported that Forbes assaulted Thornton.

---

[5] It is relevant to note that this December 2022 meeting occurred before the most recent September 2023 parenting plan was entered. Thornton did not designate any of the parenting plans in the appellate record, so we do not have them.

- Forbes did not enroll NF in counseling between April and August 2022.
- Forbes did not take NF to the doctor or dentist for nearly a year.
- The Department documented concerns about Forbes' lack of supervision from the December 2022 meeting.
- Forbes withheld NF and violated joint decision making, resulting in a contempt finding in December 2022.
- NF performed below expectations in school.
- Forbes messaged Thornton in June 2023 that he was '"giving"' NF to Thornton and could not care for NF because he had something going on at home.
- Forbes' failed to notify Thornton about his move to the Virgin Islands with NF.

Opening Br. of Appellant at 38 (quoting record). Forbes does not contend that any of these allegations was outside the scope of what the trial court could consider when evaluating adequate cause for a major modification. RCW 26.09.290(1).

     1.     <u>Sexual assault allegation and related claims</u>

The trial court's findings regarding the alleged sexual assault of NF at Serenity's house are supported by the record. In its additional findings on reconsideration, the trial court found that during her medical examination, NF did not disclose any additional assault other than kissing, and she had a normal genital examination. While we acknowledge that NF's disclosures during her physical examination could be perceived as ambiguous regarding the alleged acts of sexual assault, and a normal genital examination does not rule out sexual assault, the evidence in this record reflects that NF made conflicting statements about what happened, and we defer to the trial court's judgment when weighing the facts before it. *See Jannot*, 149 Wn.2d at 126. Accordingly, the trial court's findings regarding NF's sexual assault allegation are supported by substantial evidence.

Regarding the altercation between Forbes and Thornton at the hospital, we see no evidence that hospital staff or other individuals saw Forbes assault Thornton. Substantial evidence supports

the trial court's finding that hospital staff confirmed Forbes said, "'I [didn't] rape her, my friend raped her,'" but did not know the context of the statement. CP at 15, 316.

Perhaps most importantly, to support modification, Thornton had to raise facts showing NF's "present environment is detrimental to [her] physical, mental, or emotional health." RCW 26.09.260(2)(c). There is nothing in our record that indicates the people who posed a risk to NF regarding sexual assault, seemingly Serenity and the children in her home, moved with Forbes and NF to the Virgin Islands. And the trial court's authorization for Forbes to relocate is not being directly challenged. Thus, none of the facts surrounding NF's alleged abuse in Serenity's home would necessarily warrant modification of the September 2023 parenting plan that recognizes Forbes is living in the Virgin Islands with NF. We therefore hold that the trial court did not abuse its discretion by concluding that Thornton's evidence of the alleged sexual assault did not demonstrate a substantial change in Forbes' circumstances showing adequate cause to modify the September 2023 parenting plan.

2.      Other evidence

Despite Thornton's assertions, in its motion denying reconsideration, the trial court also found that Forbes produced records showing that NF was enrolled in counseling for most of 2022 and 2023. The record on appeal does not contain any evidence contradicting this finding, nor is there evidence establishing that stopping NF's counseling violated a parenting plan requirement. It is Thornton's burden to provide the record necessary to support her appeal. *Rhinevault*, 91 Wn. App. at 692. Thus, based on a lack of contrary evidence, we should decline to conclude that the trial court erred in making this finding.

The trial court also found that NF's "school record[s] and medical records do not demonstrate the father has intentionally or purposely failed to address the child's [medical] or scholastic needs." CP at 316. While NF did score below expectations in her school assessments, Forbes attended an academic meeting in May 2023 where the school did not recommend a formal intervention. Forbes also filed a declaration asserting that NF was succeeding in school in the Virgin Islands, and Thornton presents no facts contradicting this sworn statement. Accordingly, the trial court's finding that Forbes has not intentionally failed to address NF's scholastic needs is supported by substantial evidence in the record.

Regarding dental care, Thornton provided a photograph showing a hole in NF's tooth, CP at 3, and a letter from her dentist dated August 2022 stating that she had not been to the dentist since May 2021. However, during the December 2022 family team decision making meeting Forbes stated that NF had recently been to the dentist and the dentist had recommended monitoring her tooth until it fell out. These reports do not conflict; NF may have been to the dentist between August and December 2022, and Thornton does not demonstrate otherwise. Accordingly, based on the lack of contrary evidence presented, the trial court's finding that Forbes did not intentionally fail to address NF's dental and medical needs is supported by substantial evidence.

Regarding Thornton's concerns about the family meeting report that noted the Department's apprehensions regarding Forbes' supervision of NF, we again defer to the trial court's finding that the Department decided not to take any action regarding NF's care after this meeting, which is supported by substantial evidence on the record. Additionally, we cannot assess whether there has been a substantial change in NF's supervision after the September 2023 parenting plan. We do not have any documentation of Forbes' motion for relocation in the record

21

on appeal, so we cannot determine what he planned for NF's supervision once they moved to the Virgin Islands. Forbes did file a declaration stating that his mother and other family members were established in the Virgin Islands, which indicates he has extended family support to care for NF. Thornton claims that Forbes' message stating he could not care for NF in June 2023 demonstrates that he should not be the primary residential parent. However, the message is ambiguous about whether Forbes was saying that he could not care for NF only *at that moment* because of events at home. Accordingly, the trial court did not abuse its discretion by concluding that there was not a substantial change in Forbes' ability to supervise NF that would detrimentally affect her health.

Thornton additionally argues that Forbes did not notify her of his intent to relocate. But the trial court explicitly stated that this claim was not credible in its order denying adequate cause. We defer to the trial court on credibility findings. *In re Marriage of Chandola*, 180 Wn.2d 632, 650 n.5, 327 P.3d 644 (2014).

The trial court acknowledged that Forbes was held in contempt in December 2022 for withholding NF from Thornton. However, it also noted that Forbes could not have been withholding NF from Thornton when Thornton's motion for modification was filed in March 2024 because the September 2023 parenting plan, which is not in our record on appeal, provides that NF was to stay with Forbes during the school year and Thornton during the summer. Additionally, regarding Thornton's claims that Forbes prevented her communication with NF, we do not have the September 2023 parenting plan in our record, so we cannot determine whether Forbes' actions regarding communication were inappropriate. It is Thornton's burden to provide evidence allowing review of the issues raised on appeal, and she has failed to do so here. *Rhinevault*, 91 Wn. App. at 692.

In sum, based on the evidence in the record on appeal, substantial evidence supports the findings in the trial court's order denying adequate cause and its order denying reconsideration. Because Thornton did not make the required showing of a substantial change in Forbes' circumstances making NF's present environment detrimental to NF's physical, mental, or emotional health, we conclude that the trial court did not abuse its discretion by concluding there was not adequate cause to modify the September 2023 parenting plan. This holding aligns with the statutory language making it clear that major modifications to parenting plans are disfavored and the principle that trial court is better positioned to make these kinds of fact intensive determinations. RCW 26.09.260; *Jannot*, 149 Wn.2d at 126-27.

D.      Consideration of .191 Restrictions

Thornton also argues that the trial court abused its discretion by considering whether Thornton demonstrated a substantial change of circumstances related to her .191 restrictions when denying her motion for major modification of the September 2023 parenting plan. We disagree.

RCW 26.09.260(7) states that a non-majority residential parent who has .191 restrictions may not seek more residential time under RCW 26.09.260(5)(c)—a section of the statute that deals with *minor* modifications to a parenting plan—unless they demonstrate "a substantial change in the circumstances" related to their .191 restrictions. RCW 26.09.260(1), the subsection of the statute that outlines the requirements for major modifications, does not contain the same language or mention .191 restrictions as a barrier to major modification. Notably, neither statute prevents the trial court from considering whether a parent has made progress in eliminating the concerns that were the basis for the .191 findings when evaluating a motion for modification of a parenting plan.

In her briefing on appeal, Thornton cites as persuasive authority an unpublished Division One case, *In re Marriage of Escobedo & Achterhof*, No. 85074-1-I (Wash. Ct. App. Apr. 15, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/850741.pdf, which held that a trial court abused its discretion by denying adequate cause for a *major* modification to a parenting plan because the moving parent failed to allege a change in circumstances regarding their .191 restrictions. *Escobedo*, slip op. at 5-6.

However, the trial court here did not rely solely on Thornton's .191 restrictions to deny adequate cause to modify the September 2023 parenting plan. In its orders, the trial court made the additional findings discussed above when explaining why it concluded that Thornton had not met her burden to show a substantial change in Forbes' circumstances and that NF's present environment living with Forbes in the Virgin Islands was detrimental to her. Because those findings independently support the trial court's decision to find lack of adequate cause to support a major modification, we need not reach this issue.

## ATTORNEY FEES

Forbes requests attorney fees on appeal under RAP 18.1(a), which provides for attorney fees if permitted by an applicable statute. Forbes cites RCW 26.09.260(13), which allows courts to grant attorney fees to the nonmoving party if a motion for modification of a parenting plan was brought in bad faith.[6]

---

[6] In one sentence in her reply brief, Thornton states that she should be awarded attorney fees under RAP 18.1. However, she provides no citation to the applicable statute that would grant her attorney fees nor any argument as to why she should receive attorney fees. Accordingly, we decline to address her request. RAP 10.3(a)(6).

Forbes argues that Thornton acted in bad faith because she did not appear at the final hearing for her initial adequate cause motion in March 2023, made another adequate cause motion in March 2024, made the same claims on a motion for reconsideration, brought a motion for revision with the same arguments, and brought an appeal that primarily cites unpublished cases.

In these circumstances, Thornton's act of filing motions at the trial court does not constitute bad faith. Additionally, although she does not prevail, Thornton's arguments on appeal include debatable issues and there is no evidence they were made in bad faith. Accordingly, we conclude that Thornton did not act in bad faith and deny Forbes' requested fees.

CONCLUSION

We affirm and we decline to award attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
GLASGOW, J.

We concur:

_____
MAXA, P.J.

_____
CHE, J.